Warren S. MARTIN, Plaintiff-Appellee,

v.

MORSE BOULGER DESTRUCTOR COMPANY, Defendant-Appellant.

No. 371, Docket 25041.

United States Court of Appeals
Second Circuit.

Argued May 14, 1958.

Decided July 11, 1958.

2. See Electric & Musical Industries v. Walsh, 2 Cir., 249 F.2d 308, 309, and authorities therein cited.

**676**

Englander & Englander, New York City, for appellant. Herman Englander, New York City, of counsel.

Wait, Wilson & Newton, New York City, for appellee. Howard G. Wilson, New York City, of counsel.

Before CLARK, Chief Judge, and SWAN and LUMBARD, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by defendant from a judgment awarding damages to plaintiff in an action for breach of a royalty contract, dated December 11, 1950. Federal jurisdiction rests on diversity of citizenship. The case was tried to the court without a jury. Judge Inch made findings of fact and conclusions of law, but wrote no opinion.

The contract sued upon was in the form of a letter addressed by defendant (for brevity called Morse) to plaintiff Martin, and by him accepted. Martin, an engineer, was the owner of several patents which he had licensed Morse to use under a royalty agreement dated February 13, 1946.[1] Morse, a Delaware corporation, was engaged in the manufacture of furnaces for the disposal of wastes. In the autumn of 1950 Morse received a request from Atlantic Refining Company to submit a bid for the construction for Atlantic of a waste water sludge incinerator. Martin claimed that the building of such incinerator would "necessitate using ideas contained in" his Patent No. 2471882 or in a new patent application he proposed to file, and that said patent and new application were not covered by the existing royalty agreement. Thereupon the parties made the contract in suit. It was a royalty arrangement for the particular Atlantic job. After several recitals, which will be mentioned later, so far as relevant, the letter contract bound Morse to pay Martin $6,000., "payable to you in the same proportion, and at the same time as the Atlantic Refining Company would pay us if we obtain the Contract, which amount shall become due only if and when the said furnaces are built for the Atlantic Refining Company, in accordance with the bid which we intend to submit to them, or any modifications thereto providing the same incorporate the type of furnaces covered by the above mentioned letter patent or application for letter patent."[2]

It is not disputed that the bid submitted by Morse to Atlantic was for "the type of furnaces covered by the above mentioned letter patent or application for letter patent." Indeed, the specifications of Morse's bid, of which Martin was the author, stated, among other things, "This incinerator shall be a Martin Rotary Hearth rabble furnace designed for normal 2200° F operation." The bid was accepted and a contract was made between Morse and Atlantic on February 28, 1951. The work was not completed until March 18, 1954, but it is conceded that the contract was performed to Atlantic's satisfaction and that the full price named in Morse's bid, $245,000., was paid. Certain changes in the design of the furnace, as described in the bid, were made during construction. The appellant contends that the furnace actually built for Atlantic was not built in accordance with the bid sub-

---

1. This agreement was ended on December 5, 1951 when Martin left employment by Morse. Litigation regarding it is reported in Martin v. Morse Boulger Destructor Co., 2 Cir., 221 F.2d 218.

2. This reference is to Martin's Patent No.

2471882 and a new patent application which he proposed to file, as mentioned in the recitals of the letter contract.

The proposed application was duly filed by Martin and resulted in the granting to him of Patent No. 2676006.

mitted and the modifications thereto did not "incorporate the type of furnaces covered by the above mentioned letter patent or application for letter patent."

Finding (7) made by Judge Inch reads as follows:

"(7) The type of furnace built by defendant for Atlantic Refining Company is a single rotating hearth with air-cooled rabble arms and this type of furnace is covered by plaintiff's Patent No. 2471882 and the said application for patent filed by plaintiff January 10, 1951."

The appellant argues that this finding is erroneous. The dispute involves the phrase "type of furnaces" as used in defendant's promises to pay royalty. The phrase first appears in one of the recitals of the letter contract which reads: "whereas we understand from you [Martin] that the principle to be used in building the type of furnace necessary to give the performance called for by the Atlantic Refining Company, will necessitate using ideas contained in letter patent 2471882 and/or in a new patent application pertaining to Rotating Hearth Rabble Furnaces for which we understand that you will file a patent application not later than January 10, 1951." "Type" is a very inexact word. As shown by the recital quoted above, it apparently referred to a structure "using ideas contained in" Martin's patent or in the patent application he proposed to file. The letter contract recognized that there might be modifications to Morse's bid, and relieved defendant from paying the royalty only if the furnace constructed was not the "type" of furnace shown in Martin's patents. We do not think this provision necessarily meant that the furnace constructed must embody or incorporate one or more of the precise claims of the patents. It would suffice if "the principle to be used in building the type of furnace" for Atlantic "will necessitate using ideas contained" in Martin's patent and patent application. Judge Inch found that the "type" of furnace built was covered by plaintiff's patents. We are not convinced that this finding is clearly erroneous.

After Martin left Morse's employ on December 5, 1951, Mr. Kelley became the project engineer for the Atlantic job. He testified that the roller bearings and link-belt arrangements for rotating the hearth, as shown in Martin's patent, were not "feasible," and that he persuaded Atlantic to consent to a substituted driving arrangement. He also testified to changes in the design of the rabble arms and to the insertion of a provision for cooling the rabble teeth. And he expressed the opinion that these changes made the furnace as built a different "type" from that proposed by Martin. The latter, however, testified that he saw the furnace after it was completed and that it was the exact type. The defendant attempted to discredit Martin's testimony, but questions of credibility are for the trial judge, not the appellate court. On the record we cannot say that there is no evidence to support finding (7).

Accordingly the judgment is affirmed.